UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CRAIG BURROUGHS, et al.,

                    Plaintiff,        **ORDER**

  -against-                           13-cv-6784(JMA)(SIL)

COUNTY OF NASSAU and MICHAEL J. SPOSATO, SHERIFF of NASSAU COUNTY,

                    Defendants.
------------------------------------------------------------x

**LOCKE, Magistrate Judge:**

Plaintiffs *pro se*, who are fifteen individuals currently or previously incarcerated at the Nassau County Correctional Center ("NCCC") in East Meadow, New York, commenced this action under 42 U.S.C. § 1983 alleging various violations of their constitutional rights by Defendants County of Nassau ("Nassau County") and Sheriff Michael J. Sposato (together, "Defendants"). Presently before the Court is a letter motion by Plaintiff *pro se* Daniel Miller ("Miller"), DE [131], seeking an Order compelling the wardens or superintendents of various correctional facilities to allow Miller and four of his co-Plaintiffs *pro se* who are now housed in those facilities to communicate for purposes of this action.[1] Defendants filed a letter in opposition, DE [132]. For the reasons set forth herein, Miller's motion is denied.

---

[1] Miller's motion seeks relief on behalf of himself and incarcerated Plaintiffs *pro se* William Cowan ("Cowan"), Kurtis Phillip ("Phillip"), Jamel Williams ("Williams"), and Michael Dollison ("Dollison"). *See* Pl. Ltr. Mtn. at 1. As a *pro se* plaintiff, and as Judge Seybert has previously held in this action, Miller may not seek relief on behalf of his co-Plaintiffs *pro se*. *See* DE [21] at 3; *see also Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] pro se litigant cannot represent anyone other than himself or herself.").

1

## I. Background

When Plaintiffs *pro se* filed their Complaint on November 18, 2013, each individual was incarcerated at the NCCC as either a pre-trial detainee or sentenced prisoner. *See* DE [1]. According to the Complaint, various NCCC policies violated Plaintiffs' rights under the Americans with Disabilities Act, the Rehabilitation Act, and the Eighth and Fourteenth Amendments of the United States Constitution while they were housed in the NCCC's Medical Unit. *Id.* Since filing their Complaint, certain Plaintiffs *pro se* have been released from incarceration, while others have been transferred to other correctional facilities. *See* DE [129]; DE [130]. Presently, only Plaintiffs *pro se* Miller and Cowan are incarcerated at the NCCC. *See* DE [130]; DE [134].

Miller now seeks an Order that would allow not only him, but each of the incarcerated Plaintiffs *pro se*, to correspond with one another for purposes of this action. *See* Pl. Ltr. Mtn. at 1. According to Miller, "it will be necessary to provide each other with filed documents, such as discovery requests, motions, responses, etc." *Id.* Notably, Miller does not contend that he and his co-Plaintiffs *pro se* have sought authorization for inmate-to-inmate communication from the appropriate officials at the correctional facilities in which they are incarcerated.

In opposition to Miller's motion, Defendants argue that the relief Miller seeks "implicate[s] the policies of county, state and federal correctional facilities not at bar in the instant action," and that Miller fails to provide a "basis for why unnamed wardens at unnamed correctional facilities should make exceptions to their inter-

facility inmate mailing policies . . . ." Def. Ltr. Opp. at 1. Defendants also argue that Miller, who is not a lawyer, may not seek relief on behalf of the other Plaintiffs *pro se*, nor can Defendants advance arguments on behalf of the other correctional facilities that would be required to permit communication if this Court granted Miller's motion. *Id.* at 1-2.

## II.     Legal Standard

Generally, in matters of prison administration, courts defer to the judgment of the prison officials authorized to establish policies and regulations. *Duamutef v. Hollins*, 297 F.3d 108, 112 (2d Cir. 2002) ("The [Supreme] Court has counseled judicial restraint in the federal courts' review of prison policy and administration, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' ") (quoting *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995)); *see also Shaw v. Murphy*, 532 U.S. 223, 230, 121 S.Ct. 1475 (2001) ("[P]rison officials are to remain the primary arbiters of the problems that arise in prison management."). Judicial restraint is particularly appropriate where, as here, state correctional facility policies are at issue. *See Giano*, 54 F.3d at 1053 ("Moreover, the doctrines of separation of powers and federalism (where, as here, a state penal system is involved) dictate a policy of judicial restraint.") (quoting *Turner v. Safley*, 482 U.S.78, 85, 107 S.Ct. 2254 (1987)).

## III.    Discussion

Applying the standards outlined above, the Court denies Miller's motion, DE [131], deferring to the judgment and discretion of the correctional facilities in which Plaintiffs *pro se* are incarcerated.

3

It is well-established that restrictions on inmate-to-inmate communication are permissible so long as they are related to "legitimate penological interests." *Turner*, 482 U.S. at 93; *see also Shaw*, 532 U.S. at 231 (upholding inmate-to-inmate communication restrictions because "it is 'indisputable' that inmate law clerks 'are sometimes a menace to prison discipline' ") (quoting *Johnson v. Avery*, 393 U.S. 483, 488, 89 S.Ct. 747 (1969)).

The State of New York Department of Corrections and Community Supervision Directive No. 4422 ("Directive No. 4422") prohibits most inmate-to-inmate communication and requires that inmates obtain authorization before corresponding with inmates incarcerated in other New York State, Federal, or other correctional facilities. *See* Directive No. 4422 at § III(B)(6)(c); *see also* N.Y. Comp. Codes R. & Regs., tit. 7, § 270.2 ("An inmate shall comply with and follow the guidelines and instructions given by staff regarding facility correspondence procedures pursuant to requirements of departmental Directive Nos. 4422 and 4421").[2] Directive No. 4422 further states:

> The Superintendent or chief administrator at each facility may designate a staff member to process offender-to-offender correspondence requests. These requests will be investigated by both facilities to determine that the exchange of such correspondence will not create problems relating to the safety, security, or good order of the facilities, or the safety or well-being of any individual before any offender-to-offender correspondence is authorized. Authorization for such correspondence must come from the involved Superintendents or their designees.

\* \* \*

---

[2] Directive No. 4421 "describes the policies and procedures governing privileged correspondence," but is not implicated by Miller's present motion, as correspondence between inmates is not deemed privileged. *See* Directive No. 4421 at §§ I-II(A).

4

> b. Restrictions: Offenders are only permitted to correspond with immediate family members and codefendants in active cases. For the purposes of this Directive, immediate family members are defined as spouses, children, parents, siblings, and grandparents. ***Other offender-to-offender correspondence may only be approved in exceptional circumstances.***

Directive No. 4422 at § III(C)(1) (emphasis added).

Courts interpreting Directive No. 4422 have held that the restrictions it places on inmate communication serve a legitimate penological purpose. *See, e.g.*, *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) ("It is evident that a valid, rational connection exists between Directive 4422 and the legitimate governmental interests the directive was designed to promote.") (internal quotation omitted); *Malsh v. Garcia*, 971 F. Supp. 133, 138 (S.D.N.Y. 1997) ("Thus the defendants actions, which were plainly authorized by DOCS Directive No. 4422, do not violate the plaintiff's First Amendment rights."); *Webster v. Mann*, 917 F. Supp. 185, 187 (W.D.N.Y. 1996) ("In addition, there is no dispute that Directive No. 4422 is reasonably related to legitimate penological interests.").

Here, as co-Plaintiffs *pro se*, Directive No. 4422 requires "exceptional circumstances" to allow for inmate-to-inmate communication, which Miller has failed to identify. *See* Directive No. 4422 at § III(C)(1)(b). Rather, Miller relies on the conclusory assertion that "it will be necessary to provide each other with filed documents, such as discovery requests, motions, responses, etc." Pl. Ltr. Mtn. at 1. However, this is not a class action, Miller does not represent his co-Plaintiffs *pro se*, and correspondence between a *pro se* plaintiff and his incarcerated "legal advisor" is not entitled to greater protection than ordinary inmate-to-inmate correspondence.

5

*See Shaw*, 532 U.S. at 228 ("We thus decline to cloak the provision of legal assistance with any First Amendment protection above and beyond the protection normally accorded prisoners' speech."); *see also Bennett v. U.S.*, 31 Fed. Cl. 753, 756 (1994) ("Because plaintiff is proceeding *pro se* his alleged inability to communicate with his 'legal advisor' is of no account.").

Miller's contention that inmate-to-inmate correspondence "requires a court-order" is similarly unavailing. *See* Pl. Ltr. Mtn. at 1. To the contrary, Directive No. 4422 states that, "Authorization from the Superintendents concerned must be obtained before an offender may correspond with another offender." Directive No. 4422 at § III(B)(6)(c). Indeed, courts have specifically denied requests for relief nearly identical to that which Miller now seeks. *See, e.g., Mitchell v. Goord*, No. 06-cv-6197, 2007 WL 1288750, at *3 (W.D.N.Y. May 2, 2007) ("The Court determines that DOCS Directive 4422 is facially valid and would not permit the Court to enter an order directing that DOCS permit inmate-to-inmate correspondence in this case.").

Finally, authorization for inmate-to-inmate correspondence requires that "**both facilities** . . . determine that the exchange of such correspondence will not create problems relating to the safety, security, or good order of the facilities, or the safety or well-being of any individual . . . ." Directive No. 4422 at § III(C)(1) (emphasis added). As Defendants correctly argue, they are unable to "speak to (much less purport to defend) the policies of other correctional facilities . . . ." Def. Ltr. Opp. at 2. Accordingly, to grant Miller's motion would require overriding potentially valid concerns of safety, security, and inmate well-being at the various correctional

facilities in which Miller and his co-Plaintiffs *pro se* are incarcerated, something that this Court is unwilling to do, particularly where Miller has failed to identify "exceptional circumstances" warranting such relief. As a result, Plaintiff *pro se*'s motion is denied.

### IV. Conclusion

For the foregoing reasons, Miller's motion, DE [131] is denied.

Dated:   Central Islip, New York
           July 14, 2015                           **SO ORDERED**

                                                  s/ Steven I. Locke
                                                  STEVEN I. LOCKE
                                                  United States Magistrate Judge