UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CRAIG BURROUGHS, EDDIE MURDOCK, GARY
WALSH, JEROME KOWALSKI, KEITH ADDISON,
MICHAEL DOLLISON, RAMEL NELLUMS,
DANIEL MILLER, LEO DUCHNOWSKI, CRAIG
THURSTON, WILLIAM COWAN, KURTIS PHILLIP,
JAMES SUTHERLAND, JAMEL WILLIAMS, KEVIN
FARRELLY,

                              Plaintiffs,

              -against-

COUNTY OF NASSAU and MICHAEL J. SPOSATO,
*Sheriff of Nassau County*,

                              Defendants.
-------------------------------------------------------------------X
KENNETH GRAFTON,

                              Plaintiff,

              -against-

COUNTY OF NASSAU and MICHAEL J. SPOSATO,
*Sheriff*,

                              Defendants.
-------------------------------------------------------------------X
BILAL HASSAN,

                              Plaintiff,

              -against-

COUNTY OF NASSAU and MICHAEL SPOSATO,
*Sheriff of Nassau County*,

                              Defendants.
-------------------------------------------------------------------X

For Online Publication Only

**ORDER**

13-CV-6784 (JMA) (SIL)

**FILED**
**CLERK**
11/14/2016 3:03 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

15-CV-4563 (JMA) (GRB)

15-CV-4647 (JMA) (AYS)

**AZRACK, United States District Judge:**

Seventeen plaintiffs, proceeding pro se, bring this federal civil rights action pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701 et seq., and 42 U.S.C. § 1983 against the County of Nassau and Michael Sposato, Sheriff of Nassau County.  Plaintiffs, who are prisoners with disabilities, allege via three consolidated complaints that defendants house them in the Medical Unit ("MU") of the Nassau County Correctional Facility ("NCCF") where they are subjected to conditions inferior to those of prisoners without disabilities.  Plaintiffs also allege that defendants fail to provide them with handicap-accessible bathrooms and transport.

Before the Court is defendants' motion to dismiss the original complaint filed by fifteen plaintiffs ("Burroughs Complaint") and two consolidated complaints filed by Kenneth Grafton and Bilal Hassan.  (ECF Nos. 1, 170; Hassan Compl., Hassan v. Cty of Nassau, No. 15-CV-4647, ECF No. 1.)  Also before the Court is Burroughs plaintiff Daniel Miller's cross-motion to amend the original complaint, Grafton's and Hassan's motions for preliminary injunctions, and Grafton's motion for summary judgment.  (ECF Nos. 168, 170, 189; Hassan Compl., Hassan v. Cty of Nassau, No. 15-CV-4647, ECF No. 1.)

For the following reasons, defendants' motion to dismiss the three complaints is GRANTED IN PART and DENIED IN PART, Miller's motion to amend is GRANTED, Grafton's and Hassan's motions for preliminary injunctions are DENIED, and Grafton's motion for summary judgment is DENIED.

## I.    BACKGROUND

In November 2013, fifteen pro se plaintiffs initiated this action against Nassau County

and Sheriff Sposato.  Plaintiffs identify themselves as prisoners with disabilities who are housed in the Medical Unit ("MU") at the Nassau County Correctional Facility ("NCCF").  Plaintiffs seek permanent injunctive and monetary relief to remedy various deprivations in violation of the ADA, RA, and Eighth and Fourteenth Amendment.  Initially, they sought a preliminary injunction to enjoin defendants from enforcing their allegedly discriminatory policies.  That motion was denied by the Honorable Joanna Seybert when she adopted the Report and Recommendation of the Honorable William D. Wall on June 9, 2014.  (ECF No. 74.)

In July of 2015, Kenneth Grafton, another prisoner housed in the MU at the NCCF, filed a complaint against the County and Sheriff Sposato alleging that he, too, suffers from various deprivations in violation of the ADA, RA, and Eighth and Fourteenth Amendment.  (ECF No. 170.)  In addition to permanent injunctive and monetary relief, Grafton seeks a preliminary injunction.  In August of 2015, plaintiff Bilal Hassan, who is also housed in the MU, did the same.  (Hassan v. Cty of Nassau, No. 15-CV-4647, ECF No. 1.)

On March 30, 2016, defendants moved to dismiss the Burroughs Complaint.  (ECF No. 171.)  Before that motion was decided, the Court consolidated the Burroughs, Grafton, and Hassan Complaints, finding that each alleged substantially similar claims arising out of the conditions of confinement at the MU.  (ECF No. 173.)  In the Consolidation Order, the Court directed defendants to serve their motion to dismiss on Grafton and Hassan.  Both Grafton and Hassan opposed the motion.  (ECF Nos. 177, 183.)  Of the fifteen Burroughs plaintiffs, only one—Daniel Miller—opposed.  (ECF No. 171.)  In his opposition, Miller cross-moved asking leave to amend.  (Id.)  Then, in July of 2016, Grafton moved for summary judgment on all of his claims.  (ECF No. 189.)

Since the motions were filed all but one of the seventeen plaintiffs have been moved out of the MU to general housing, transferred from the NCCF, or released.  (ECF Nos. 171, 188.) Only Hassan remains housed at the MU.

In their complaints, all seventeen plaintiffs allege that the NCCF maintains a policy by which inmates with disabilities are automatically assigned to the MU.  Plaintiffs further allege that the inferior conditions of confinement that they endure at the MU violate the Constitution, as well as the ADA and RA.  These conditions include, among other things, limitations on time for recreation, limitations on time for hygiene, limitations on time permitted outside of their cells, the nature of the lighting in their cells, and the denial of the opportunity to participate in the NCCF's rehabilitation programs.  In addition, plaintiffs allege that they are prevented from attending court and medical appointments because the NCCF does not own a handicap-accessible van.  The Burroughs plaintiffs also allege that defendants retaliated against them for filing grievances regarding the inferior conditions of confinement, while Grafton and Hassan allege that the NCCF fails to maintain handicap-accessible bathrooms.

Defendants seek to dismiss all three complaints.  They move to dismiss the claims of four plaintiffs for failure to prosecute, the injunctive claims of all but one plaintiff for mootness, and the underlying claims of all plaintiffs, arguing that plaintiffs (1) have failed to allege facts showing that they were denied services because of their disabilities in violation of the ADA and RA; (2) have failed to allege facts rising to the level of Eighth Amendment and Fourteenth Amendment violations; (3) have failed to establish Sheriff Sposato's personal involvement in the alleged violations; and (4) have failed to establish a policy, custom, or usage triggering municipal liability for the alleged violations.

3

## II.    DISCUSSION

### A.  Motion to Dismiss Pursuant to 41(b)

Federal Rule of Civil Procedure 41(b) allows a district court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with . . . a court order . . . ." Fed. R. Civ. P. 41(b).

On December 12, 2013, a letter issued by the Court's pro se office informed plaintiffs Gary Walsh, Jerome Kowalski, Ramel Nellums, and James Sutherland that it was their duty to prosecute their case and to keep the Court informed of any change of address.  Walsh, Kowalski, Nellums, and Sutherland were warned that failure to do so could result in dismissal.  (ECF No. 19.)  Over the next fifteen months, numerous individual mailings to these plaintiffs were returned as undeliverable due to changes in their addresses, which were not reported to the Court. (See ECF Nos. 23, 26, 43, 44, 45, 80, 81, 82, 84, 89, 90, 91, 94, 98, 100, 102, 108.)  As a result, in April of 2015, the Honorable Steven I. Locke issued an order, again directing these plaintiffs to prosecute their case and to keep the Court informed of any change of address.  They were again warned that failure to do so may result in dismissal.  (ECF No. 120.)  On January 20, 2016, this Court warned plaintiffs for the third time that failure to notify the Court of a change of address could result in dismissal.  (ECF No. 153.)  Since the Court's last Order, several individual mailings to these plaintiffs have been returned as undeliverable, (ECF Nos. 156, 158, 160, 161, 176, 179), none of the four has contacted the Court to update his address, and none has demonstrated his involvement in the case in any other way.  Defendant's motion to dismiss all claims brought by Walsh, Kowalski, Nellums, and Sutherland is granted without prejudice.

### B.  Motion to Dismiss Claims for Injunctive Relief as Moot

"In this [C]ircuit, an inmate's transfer from a prison facility generally moots claims for

declaratory and injunctive relief against officials of that facility." Shepherd v. Goord, 662 F.3d 603, 610 (2d Cir. 2011) (quoting Salhuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006)); Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.").

Since bringing this action, sixteen of the seventeen plaintiffs have either been returned to the general prison population, transferred to another correctional facility, or released. (ECF Nos. 171, 188.) Only Hassan remains housed at the MU. Defendants' motion to dismiss all but Hassan's claims for declaratory and injunctive relief is granted without prejudice.

## C. Motions to Dismiss Pursuant to Rules 12(b)(6) and 12(c)

### 1. Standard for Motions to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing the motion, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). "Where, as here, the complaint was filed pro se, it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, a pro se complaint must state a plausible claim for relief." Nielson v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014) (quoting Walker v. Schult, 717 F.3d 119, 124

5

(2d Cir. 2013)).

## 2. ADA/RA

Section 504 of the Rehabilitation Act and the ADA impose identical requirements. Sayers v. City of New York, No. 04-CV-3907, 2007 WL 914581, at *7 n.20 (Mar. 23, 2007) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 146 (2d Cir. 2002)).  Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the RA provides, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  Together, the ADA and RA require "only that a particular service provided to some not be denied to disabled people."  Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999) (citing Doe v. Pfrommer, 148 F.3d 73, 83 (2d Cir. 1998) and Alexander v. Choate, 469 U.S. 287, 304 (1985)).

Because the ADA and RA do not provide for liability against individual defendants, plaintiffs' claims against Sheriff Sposato are dismissed.

Grafton and Hassan claim that the absence of accessible bathrooms violates the ADA and RA.  Other courts have found that plaintiffs who allege lack of accessible showers and toilets sufficiently state a claim for violations of the ADA.  See, e.g., Alster v. Goord, 745 F. Supp. 2d 317, 338–9 (S.D.N.Y. 2010) (denying summary judgment on ADA claim when plaintiff claimed he was denied access to a wheelchair-accessible shower); Muhammad v. Dep't of Corr., 645 F.

Supp. 2d 299, 314 (D.N.J. 2008) (denying summary judgment on ADA claim when plaintiff's access to handicap-accessible shower was restricted without penological justification and a reasonable alternative, i.e., housing plaintiff on same floor as accessible shower, existed). Because Grafton and Hassan state similar claims, defendants' motion to dismiss these claims is denied.

All plaintiffs allege that the NCCF's failure to transport them in accessible vehicles violates the ADA and RA.  Allegations that a public entity has failed to maintain safe transport for prisoners with disabilities can be sufficient to state a violation of the ADA and RA.  See Allah v. Goord, 405 F. Supp. 2d 265, 280–81 (S.D.N.Y. 2005) (denying motion to dismiss ADA claim alleging that prison transport vehicle was not wheelchair-accessible).  Hassan alleges that the lack of accessible transport has completely precluded him from appearing at the courthouse in his criminal case.  (Hassan Compl. ¶ 26.)  The eleven Burroughs plaintiffs and Grafton allege that the lack of accessible transport expose them to risk of injury whenever they are transported to the courthouse or outside medical appointments.  (Burroughs Compl. ¶¶ 56–60; Grafton Compl. ¶¶ 27–28.)  Those plaintiffs and Hassan have alleged plausible claims concerning the lack of a handicap-accessible van.  See Allah, 405 F. Supp. 2d at 280 ("Although plaintiff is not wholly precluded from participating in [a] service, if he is at risk of incurring serious injuries each time he attempts to take advantage of [a service], surely he is being denied the *benefits* of this service.").  Defendants' motion to dismiss these claims is denied.

Lastly, all plaintiffs allege that other conditions of confinement at the MU violate also the ADA and RA because:  (1) plaintiffs were assigned to the MU pursuant to NCCF's policy that automatically assigns inmates with disabilities to the MU; and (2) certain conditions in the MU

are inferior to conditions in the building where general population inmates are housed.  For example, plaintiffs claim that they are denied access to rehabilitative programs that are offered to non-disabled inmates housed in another building.  Defendant argues that plaintiffs are not excluded from these programs because of their disabilities, but rather because they are housed in the MU.  (Supp. Mem. dated Sept. 21, 2015 at 15–16, ECF No. 171.)  But this argument ignores the allegation that, pursuant to NCCF's policy, plaintiffs were only assigned to the MU *because of their disability*.[1]  If, as defendant contends, the inferior conditions flow from plaintiffs' assignment to the MU and that assignment was wholly determined by their disabilities, then at bottom, plaintiffs are subjected to these conditions because of their disabilities.  Defendants' motion to dismiss these claims is denied.

### 3.  Section 1983 Claims

"To state a claim under [28 U.S.C.] § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States."  Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

Plaintiffs allege that the conditions of confinement at the MU, including the NCCF's failure to procure an accessible vehicle and maintain accessible bathrooms, violate the Eighth Amendment's prohibition against cruel and unusual punishment and substantive due process under the Fourteenth Amendment.  They also claim that the policy by which inmates with disabilities are automatically housed in the MU violates procedural due process under the

---

[1] If the policy alleged by plaintiffs does, in fact, exist, defendants may have reasonable justifications for automatically assigning all disabled prisoners to the MU.  And, there may also be reasonable justifications for why prisoners in the MU do not have access to all of the same services and programs available to inmates housed outside of the MU.  Defendants, however, have not cited any such justifications in their motion papers nor have they argued for dismissal on such grounds.

Fourteenth Amendment.  They further allege the discriminatory housing policy violates the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs also allege that defendants have denied them access to the courts.  Plaintiffs conclude by alleging that defendants retaliated against them for filing grievances regarding the constitutional violations.

Plaintiffs' conditions of confinement claims based on the Eighth and Fourteenth Amendments fail because they have not sufficiently pled supervisory or municipal liability. Plaintiffs' retaliation claims similarly fail because they have not pled supervisory or municipal liability, and in the alternative, these claims fail on the merits.  Although plaintiffs' plausibly allege supervisory and municipal liability with regard to their procedural due process, equal protection, and denial of access to courts claims, these claims ultimately fail on the merits.

### i. Supervisory Liability

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."  Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).  In Colon v. Coughlin, the Second Circuit identified five ways to demonstrate a supervisory defendant's personal involvement:  "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were

occurring."  58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  The Circuit has yet to determine whether the Supreme Court's decision in Iqbal, 556 U.S. 662, altered the requirements for showing supervisory liability under Colon.  See Shaw v. Prindle, --- F. App'x. ---, 2016 WL 4578630, at *1 n.2 (2d Cir. Sept. 1, 2016) (citing Grullon, 720 F.3d at 139.  The Court need not resolve that difficult question here because plaintiffs fail to plead Sheriff Sposato's personal involvement in the alleged conditions of confinement even under Colon.

Plaintiffs have failed to allege that Sheriff Sposato was personally involved in either the deprivations associated with the conditions of confinement at the MU or the episodes of retaliation cited in the Burroughs Complaint.  General allegations that Sposato is "responsible for administration, direction and control of the [NCCF] and all facilities, vehicles, amenities . . . thereof . . . ," (Burroughs Compl. ¶ 6; Grafton Compl. ¶ 6; Hassan Compl. ¶ 6) are insufficient to demonstrate that he knew or should have known of the facts underlying the particular violations alleged.  See Provost v. City of Newbergh, 262 F.3d 146, 155–56 (2d Cir. 2001) (finding that evidence that police supervisor was at the police station, told another officer to "handle" the plaintiff, and stood some feet behind arresting officer was insufficient for a reasonable juror to conclude that supervisor had knowledge of the facts surrounding plaintiff's false arrest).  Plaintiffs' references to unspecified grievances that may, or may not, have been filed are also insufficient to show that Sposato had actual or constructive knowledge of the conditions of confinement at the MU or the alleged systematic retaliation against inmates who filed grievances.[2]    See Smith v. Rosati, No. 10–CV–1502, 2013 WL 1500422, at *6

---

[2] As discussed in greater detail below, the Burroughs plaintiffs' retaliation claims also fail on the merits.  See supra II.3.iv.

(N.D.N.Y. Feb. 20, 2013) (finding that defendant's failure to respond to plaintiff's complaint does not amount to knowledge of violation sufficient to trigger supervisory liability); Dorlette v. Butkiewicus, No. 11-CV-1461, 2013 WL 4760943, at *20 (D. Conn. Sept. 4, 2013) (granting summary judgment where plaintiff made conclusory allegations that high-ranking officials reviewed his paperwork and were "well aware" of his administrative segregation); Parks v. Smith, No. 08–CV–0586, 2011 WL 4055415, at *14 (N.D.N.Y. Mar. 29, 2011) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that official's personal involvement." (citing Rivera v. Goord, 119 F. Supp. 2d 327, 344–45 (S.D.N.Y. 2000))), adopted by, 2011 WL 4055414 (N.D.N.Y. Sept. 12, 2011).

Accordingly, defendants' motion to dismiss plaintiffs' Eighth Amendment claims concerning conditions of confinement, substantive due process, and retaliation claims is granted with regard to Sheriff Sposato. The only actions arguably attributable to Sheriff Sposato are the NCCF's housing policy and his practice of "scratching" court dates. Even assuming that plaintiffs have sufficiently pled personal involvement for those claims, as discussed in greater detail below, those claims fail on the merits.[3]

### ii. Municipal Liability

Municipalities are liable under § 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [the municipality's] officers." Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978). "A municipal policy may be pronounced or tacit

---

[3] Plaintiff's claims arising out of the housing policy fail because they do not sufficiently allege any underlying procedural due process or equal protection violation. See supra II.3.iii and II.3.iv. Claims arising out of the "scratching" policy fail because they do not sufficiently allege that plaintiffs were denied access to the courts. See II.3.iv.

and reflected in either action or inaction." Cash v. Cty. Of Erie, 654 F.3d 324, 334 (2d Cir. 2011); id. (quoting City of Canton v. Harris, 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part) ("Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of Monell are satisfied")).

To establish the existence of a policy, a plaintiff must allege: "(1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come in contact." Jones v. Westchester Cty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 417 (S.D.N.Y. 2008) (citation omitted). Liberally construed, plaintiffs' complaints attempt to invoke municipal liability for the following alleged actions: (1) a formal discriminatory housing policy; (2) actions taken or decisions made by officials resulting in inferior conditions of confinement, (3) actions taken or decisions made by officials resulting in systematic retaliation of prisoners who file grievances; (4) inferior conditions of confinement amounting to a custom or usage; (5) systematic retaliation rising to the level of custom or usage.

The only formal policy alleged in the complaints is the NCCF's housing policy. Even assuming that plaintiffs have pled Monell liability for this claim, as discussed in greater detail

below, claims arising out of the housing policy fail, on the merits, because plaintiffs do not sufficiently allege any underlying procedural due process or equal protection violation.  See supra II.3.iii and II.3.iv.

Plaintiffs' claims concerning retaliation and alleged conditions of confinement that violate the Eighth Amendment do not satisfy the second method of establishing an official policy because plaintiffs fail to allege that Sheriff Sposato, the only official named in the complaints, is the relevant policymaker regarding the conditions of confinement at the MU or the NCCF's grievance procedure.  To establish municipal liability, "the Court must ask whether the [named] governmental official is a final policymaker for the local government in a particular area, or on the particular issue involved in the action."    Capasso v. Metro. Transp. Auth. of N.Y., 198 F. Supp. 2d 452, 464 (S.D.N.Y. 2002).   Plaintiffs' claims that Sheriff Sposato is "responsible for administration, direction and control of the NCC[] and all facilities, vehicles, amenities . . . thereof . . . ," (Burroughs Compl. ¶ 6; Grafton Compl. ¶ 6; Hassan Compl. ¶ 6,) are too general to discern whether he has final decision-making authority over which vehicles to purchase, how to outfit the NCCF's bathrooms, lockdown hour requirements, recreational hour requirements, or the grievance procedure at the NCCF.    See Dilworth v. Goldberg, 914 F. Supp. 2d 433, 453–55 (S.D.N.Y. 2012).

Plaintiffs allegations do not satisfy the third method of establishing a custom or usage because the facts fail to show that Sheriff Sposato possessed actual or constructive knowledge of the allegedly "persistent and widespread" deprivations described in the complaint.   See supra II.3.i.

Accordingly, defendants' motion to dismiss plaintiffs' Eighth Amendment, substantive

due process, and retaliation claims against Nassau is granted.

### iii. Fourteenth Amendment: Procedural Due Process

"In order to state a claim for denial of procedural due process . . . a prisoner must allege that he possessed a protected liberty interest, and was not afforded the requisite process before being deprived of that liberty interest."  Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000). "[A]dministrative confinement . . . is not restricted by the Fourteenth Amendment's Due Process Clause unless the state has created a liberty interest in remaining free from such confinement." Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994) (citing Gittens v. LeFevre, 891 F.2d 38, 40 (2d Cir. 1989)).  The Court assumes that there is a state-created liberty interest applicable to plaintiffs' claims.  Cf. id. (citing N.Y. Comp. Codes R. & Regs. tit. 7, § 251−1.6(a) (1988)).

However, a state-created liberty interest is only actionable under § 1983 where its deprivation subjects the prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  Welch v. Bartlett, 196 F.3d 389, 392 (2d Cir. 1999) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)).  "[A] prisoner who experiences a deprivation arising under mandatory rules has no actionable due process claim if other prisoners experience approximately the same deprivation in the ordinary administration of the prison with sufficient regularity that such deprivation is typical."  Id.; see, e.g., Wilkinson v. Austin, 545 U.S. 209, 221−24 (2005) (finding that conditions in Ohio's supermax prison—i.e., prohibition on almost all human contact, twenty-four-hour light, one hour of exercise per day limited to a small, indoor room, and assignment for an indefinite amount of time—were sufficiently atypical to give rise to a protected liberty interest); Sandin, 515 U.S. at 485−87 (declining to find liberty interest where conditions of segregative confinement were "within in

14

the range" to be normally expected during incarceration).

The Court liberally construes plaintiffs' complaints as raising procedural due process claims regarding their conditions of confinement after transfer to the MU.  (Burroughs Compl. ¶¶ 29–55; Grafton Compl. ¶¶ 13–26; Hassan Compl. ¶¶ 13–24.)  Plaintiffs, however, do not state a plausible procedural due process claim.  Plaintiffs' own allegations show that the conditions at the MU are not a "dramatic departure," Sandin, 515 U.S. at 485, from those faced by inmates in the general population.  (See, e.g., Borroughs Complaint ¶¶ 31, 37 (inmates in the MU are only permitted 1 hour of recreation per day, while inmates in general population are permitted 8 hours of recreation per day); id. ¶¶ 31, 36 (inmates in the MU are locked down for 19 hours a day, while inmates in general population are locked down for 16 hours a day); id. ¶¶ 31, 37–39 (inmates in the MU are restricted to one morning shower, while inmates in general population may shower at any time they are not locked down).)  These differences are well "within the range of confinement to be normally expected" during incarceration in the NCCF. Sandin, 515 U.S. at 487; see also Shariff v. Coombe, 655 F. Supp. 2d 274, 302 (S.D.N.Y. 2009) (dismissing procedural due process claim involving broken concrete and inaccessible bathrooms, telephones, water fountains, and food service counter because the alleged conditions "d[id] not impose the requisite level of atypical and significant hardship necessary to give rise to a protected liberty interest").  Defendants' motion to dismiss these claims is granted.

### iv. Fourteenth Amendment: Equal Protection

To state a claim based on a violation of the Equal Protection Clause, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).  Because

people with disabilities are not a suspect or quasi-suspect class, plaintiffs alleging discrimination based on disabilities must show that a state's action cannot withstand rational basis review. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 442, 446 (1985) (holding that a plaintiff claiming discrimination based on a disability must establish that state action was not rationally related to a legitimate governmental purpose); Phillips, 408 F.3d at 129 (holding that, in the prison setting, a plaintiff must establish that his treatment was not reasonably related to a legitimate penological interest).

Plaintiffs allege that defendants maintain a policy by which "all individuals confined in wheelchairs, using canes, walker or crutches, or having a physical or mental impairment which alters one or more major life activities must be housed in the Medical Unit or Clinic." (Hassan Compl. ¶ 10; see also Burroughs Compl. ¶ 24 (similar); Grafton Compl. ¶ 10 (similar).) Plaintiffs further allege that because they are housed in the MU, they are subjected to inferior conditions. (Burroughs Compl. ¶¶ 29–55; Grafton Compl. ¶¶ 12–26; Hassan Compl. ¶¶ 12–25.) Plaintiffs claim that, among other things, they are denied the opportunity to participate in rehabilitation programs made available to inmates without disabilities. (Burroughs Compl. ¶ 54; Grafton Compl. ¶ 25; Hassan Compl. ¶ 25.) Defendants do not deny these disparities, but rather argue that plaintiffs have failed to allege purposeful discrimination by defendants. The Court disagrees. Plaintiffs have pled a facially discriminatory policy, which classifies prisoners based solely on the existence of a disability. As alleged, that classification determines where an inmate is housed, and, ultimately, the conditions to which he is subjected and the programs in which he is allowed to participate. See Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 1999) (noting that a plaintiff who pleads a facially discriminatory policy sufficiently states a claim of

intentional discrimination).

Nevertheless, plaintiffs' claims fail because a rational basis for defendants' housing policy is readily apparent. A court may assess whether a policy has rational basis at the motion to dismiss stage where "it takes but momentary reflection to arrive at a [governmental] purpose that is both legitimate beyond dispute and rationally related to the state's classification . . . ." Johnson v. Baker, 108 F.3d 10, 11–12 (2d Cir. 1997) (quoting Mahone v. Addicks Util. Dist., 836 F.2d 921, 936 (5th Cir. 1988)). A policy of automatically transferring disabled inmates to the MU can be justified, under rational basis review, because their disabilities may make it more likely that they would require frequent medical care and supervision. Also, this alleged policy can pass muster, under rational basis review, because inmates with disabilities may be particularly vulnerable and, thus, removing them from general population is justifiable as a protective measure. Either of these explanations would be reasonably related to a legitimate penological interest—i.e., inmate health and safety. Because a readily apparent rational basis for defendants' housing policy exists, the motion to dismiss these claims is granted.

### v. Access to Courts

The Constitution guarantees inmates a right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). "To establish standing to assert a claim of denial of access to the courts, a prisoner must demonstrate an 'actual injury' by showing the denial of legal resources prejudiced pending litigation." Konigsberg v. Lefevre, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) (citing Lewis v. Casey, 518 U.S. 343, 351–53 (1996)); see, e.g., Amaker v. Fischer, 453 F. App'x 59, 63–64 (2d Cir. Dec. 20, 2011) (affirming dismissal where plaintiff made conclusory allegations of prejudice without identifying a proceeding or how it was

17

adversely affected).

Plaintiffs allege that defendants have caused them to miss court dates by either canceling court appearances without their consent or failing to provide transportation to the court house. Most plaintiffs, however, fail to reference any particular legal proceeding. (Burroughs Compl. ¶¶ 61–62.) The one exception, Hassan, whom the Court construes to be referencing the criminal proceeding underlying his detention, still fails to identify any adverse outcome in that proceeding attributable to defendants' actions. (Hassan Compl. ¶ 26.) These allegations are too general for the Court to discern whether plaintiffs have suffered an actual injury. Defendants' motion to dismiss these claims is granted.

### vi. Retaliation

"[I]n order to survive a motion to dismiss a complaint, a plaintiff asserting . . . retaliation claims must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)). Retaliation claims must be "'supported by specific and detailed factual allegations,' not stated in 'wholly conclusory terms.'" Friedl v. City of New York, 210 F.3d 79, 86 (2d Cir. 2000) (quoting Flaherty v. Coughlin, 713 F.3d 10, 13 (2d Cir. 1983)). This is especially true when assessing the sufficiency of allegations made by prisoners. Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) ("[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration [the Court is] careful to require non-conclusory allegations." (citation omitted)); Graham v.

Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (finding that retaliation claims by prisoners are "prone to abuse").

Only the eleven Burroughs plaintiffs bring retaliation claims.  Miller withdraws his retaliation claim, explaining that "these claims were not raised as substantive claims" in the original complaint.  (Opp'n Mem. at 9, ECF No. 171.)  Miller's retaliation claim is dismissed.

The remaining plaintiffs fail to allege plausible claims of retaliation. (See Burroughs Compl. ¶¶ 64–73.)  No matter how disturbing, claims of what prison officials do "in many instances" or "typically," are too general to state plausible claims.  (Id. ¶¶ 64, 68.)  Plaintiffs fail to allege the most basic facts underlying their retaliation allegations.  For example, plaintiffs generally allege that, "[i]n many instances, the defendants, by and through their Correctional and grievance staff, . . . either refuse to provide plaintiffs with official grievance forms or take other actions calculated to prevent inmates from filing grievances."  (Burroughs Compl. ¶ 64.)  Because plaintiffs have failed to allege plausible retaliation claims, defendants' motion to dismiss those claims is granted.

**D.  Motion to Amend**

Miller's motion to amend the original complaint is granted.  Miller and the other plaintiffs have thirty (30) days to file an Amended Complaint curing the deficiencies identified in this Order.  Failure to do so will result in dismissal of the deficient claims with prejudice.

**E.  Motions for Preliminary Injunctions**

In their complaints, Grafton and Hassan seek preliminary injunctions to (1) enjoin defendants from enforcing policies and practices, which subject them to discriminatory treatment; (2) require defendants to procure a handicap-accessible vehicle for transport; and (3)

19

require defendants to maintain handicap-accessible bathrooms.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Burroughs v. Cty. of Nassau, 13-CV-6784, 2014 WL 2587580, at *7 (E.D.N.Y. Jun. 9, 2014) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Where a party seeks an injunction that will alter, rather than maintain, the status quo, he must satisfy a more exacting standard, by demonstrating a "clear or substantial likelihood of success on the merits." Id. (quoting Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008). Moreover, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." Fisher v. Goord, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 846–47 (1994) and cases from the Fifth and Eighth Circuits).

Hassan has offered no evidence to support his assertions that he is likely to (1) suffer irreparable harm in the event an injunction does not issue or (2) succeed on the merits of his claims. "Conclusory assertions lacking supporting evidence will not support a preliminary injunction." Dizak v. Hawks, No. 15-CV-1171, 2016 WL 4702438, at *2 (N.D.N.Y. Sept. 8, 2016) (citation omitted); see also Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC, 496 F. Supp. 2d 354, 356 (S.D.N.Y. 2007) (finding that plaintiff who failed to submit evidence supporting conclusory allegation did not meet burden of showing substantial likelihood of success on the merits); Hancock v. Essential Res. Inc., 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Because the Court need not

accept the unsworn factual allegations in a complaint when deciding to issue a preliminary injunction, Hassan's request for a injunctive relief is denied.

Grafton's request for injunctive relief is denied as moot for the reasons stated in Section II.B.

**F. Motion for Summary Judgment**

Grafton has also moved for summary judgment on all of his claims. Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff's motion for summary judgment is clearly premature, as defendants have not had the opportunity to obtain discovery from Grafton concerning his claims. Grafton's motion for summary judgment is denied.

### III. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, Miller's motion to amend is GRANTED, Grafton's and Hassan's motions for preliminary injunctions are DENIED, and Grafton's motion for summary judgment is DENIED.

**SO ORDERED**.

Date:    November 14, 2016
        Central Islip, New York

                                                      _____/s/ (JMA)_____
                                                      Joan M. Azrack
                                                      United States District Judge